# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MATIAS MONTEMAYOR, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 02-1283 (GK) |
| | : | |
| FEDERAL BUREAU OF PRISONS, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment [Dkt #62] and Defendant's Second Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment or to Transfer (Def.'s Mot.") [Dkt. #61]. Having considered the Motions, the Oppositions, the Replies, the entire record in this case, and the applicable case law, the Court will **deny** both Motions.

## I.    BACKGROUND

Plaintiff is a federal prisoner who has been in the custody of the Federal Bureau of Prisons ("BOP") since 1981. Plaintiff's Second Amended Complaint ("Sec. Amd. Compl."), ¶ 4; Def.'s Mot., Ex. 1 ("Montemayor Dep.") at 4. He brings this action against BOP under the Privacy Act, 5 U.S.C. § 552a. Sec. Amd. Compl., ¶ 2.

Since 1993, BOP's records have designated Plaintiff an associate of a Security Threat Group ("STG" or "STG group") because of his alleged affiliation with a prison gang.[1] Sec. Amd. Compl.,

---

[1]    Security Threat Groups are "groups, gangs, or inmate organizations that have been observed acting in concert to promote violence, escape, drug activity, or terrorist activity." Pl.'s Facts, Ex. 1 (BOP Program Statement 1380.03) at 2. A Disruptive Group is a subset of the STG
(continued...)

¶ 7; Pl.'s Facts, Ex. 6 (Wilford Dep.) at 75.[2]  Plaintiff consistently has denied any gang association, and asserts that BOP's records pertaining to him in this regard are entirely false.  See Sec. Amd. Compl., ¶¶ 6-8, 13.

Plaintiff alleges that BOP's reliance on the false records of gang association "began a pattern of regularly isolating [Plaintiff] in administrative detention," including confinement in a small cell, severe restrictions on activities, and restrictions on access to his personal property.[3]  Sec. Amd. Compl., ¶ 9.  These periods of administrative detention, he alleges, caused substantial stress and has adversely affected his health.[4]  Id., ¶¶ 14-15.  In particular, Plaintiff remains concerned that actual members of the gang will retaliate against him.  Id., ¶ 16.

In 2002, BOP determined that the STG designation was not warranted.  Sec. Amd. Compl., ¶ 20.  Although BOP stated that it would remove the STG designation from its records pertaining to Plaintiff, the agency allegedly continues to maintain and rely upon false records of gang

---

[1](...continued)
groups and is certified by a BOP official as posing a threat to security that cannot be managed by usual procedures.  Id.  The Mexican Mafia and the Mexikanemi are certified Disruptive Groups. Id., Ex. 25 (Excerpt of May 30, 1997 Operations Memorandum certifying list of disruptive groups). Plaintiff had been designated a Mexican Mafia associate on November 9, 1993, and remained so designated until he was transferred out of the Federal Correctional Institution in El Reno, Oklahoma on April 13, 1995.  Id., Ex. 2 (Atterson Dep.) at 70.  On that same date, his designation was changed to that of a Mexikanemi associate.  Id.

[2]    The abbreviation "Pl.'s Facts" refers to Plaintiff's Statement of Material Facts as To Which  There is No Genuine Issue.

[3]    Plaintiff's administrative efforts to amend or correct his record were unsuccessful. See Sec. Amd. Compl., ¶¶ 17-19.  See also Compl. at 7-9 & Ex. (Request for Administrative Remedy – Informal Resolution (BP-8); Request for Administrative Remedy (BP-9); Central Office Administrative Remedy Appeal (BP-11)).

[4]    Plaintiff alleges that these detentions contributed to his worsening medical condition generally, and caused his heart attack and resulting emergency surgery.  See Sec. Amd. Compl., ¶ 15.

association.  Id., ¶ 21.  Consequently, Plaintiff has been placed in administrative detention on other occasions solely on the basis of the alleged gang affiliation, and has been transferred from one BOP facility to another.  Id., ¶¶ 22-23.  Such treatment, Plaintiff alleged, constitutes a "continuing pattern of harassment . . . that has gone on for over a decade."  Id., ¶ 23.

In this action, Plaintiff demands, among other relief, monetary damages and amendment or expungement of the inaccurate records.  Sec. Amd. Compl., ¶ 33.

## II.   STANDARD OF REVIEW

With regard to Defendants' Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12,  a complaint should not be dismissed unless the "'plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Browning v. Clinton, 292 F.2d 235, 242 (D.C. Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-45 (1957)).  In deciding a motion to dismiss, a court must "accept the plaintiff's factual allegations as true and construe the complaint 'liberally,' 'grant[ing] plaintiff[] the benefit of all inferences that can be derived from the facts alleged.'"  Browning, 292 F.3d at 235 (quoting Kowal v. MCI Communications Corp., 16 F.2d 1271, 1276 (D.C. Cir. 1994)).

For a motion to transfer, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Section 1404(a) vests "discretion in the district court[] to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  Stewart, 487 U.S. at 27 (internal citations omitted). The moving party bears the burden of establishing that the transfer of the action to another federal

district is proper.  <u>See</u> <u>Shenandoah Assoc. Ltd. P'ship v. Tirana</u>, 182 F. Supp.2d 14, 25 (D.D.C. 2001).

Finally, with regard to Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment, such dispositive motions may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A material fact is one "that might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  When evaluating a summary judgment motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  <u>Id.</u> at 255; <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150 (2000).  The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248; <u>see also</u>, <u>Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner</u>, 101 F.2d 145, 150 (D.C. Cir. 1996).

## III.  DEFENDANT'S SECOND RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT OR TO TRANSFER

### A.   <u>In Forma Pauperis Status</u>

The Court may allow an indigent plaintiff's case to proceed if he cannot pay the filing fee in full.  <u>See</u> 28 U.S.C. § 1915(a).  *In forma pauperis* status authorizes the Clerk of Court to effect service on the indigent plaintiff's behalf and renders him eligible for appointment of counsel from

the Civil Pro Bono Panel. <u>See</u> 28 U.S.C. § 1915(d), (e)(1); Fed. R. Civ. P. 4(c)(2); LCvR 83.11(b)(3). Notwithstanding *in forma pauperis* status, a "prisoner shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). If the prisoner cannot pay the filing fee in full at the time he files his complaint, the Court may order payment in installments. <u>Id.</u> "[T]he court shall dismiss the case at any time if the court determines that . . . the [prisoner's] allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A).

Plaintiff submitted an application to proceed *in forma pauperis* when he filed the original complaint. <u>See</u> Dkt. #1-2. Although Plaintiff paid the filing fee in full shortly thereafter, the Court granted Plaintiff's application. <u>See</u> Dkt. #2.[5]

Defendant argues that dismissal of this action is warranted because of misstatements and omissions in Plaintiff's application to proceed *in forma pauperis*. <u>See</u> Def.'s Mot. at 2. Dismissal with prejudice under 28 U.S.C. § 1915(e)(2) "is a harsh remedy to be reserved for the most extreme cases." <u>Morales v. E.I. du Pont de Nemours Co.</u>, 2004 WL 2106590 at 2 (W.D.N.Y. September 21, 2004). In our Circuit, the Court of Appeals has ruled that in general, "dismissal of a lawsuit never heard on its merits is a drastic step normally to be taken only after unfruitful resort to lesser sanctions." <u>Jackson v. Washington Monthly Co.</u>, 569 F.2d 119, 123 (D.C. Cir. 1977).

While Plaintiff may have omitted certain information on his *in forma pauperis* application, (perhaps because the property in question was located in Mexico), this case does not present an egregious abuse of the statute. The record does not clearly establish the level of bad faith or blatant misrepresentation that would justify dismissal with prejudice as an appropriate, and draconian, sanction.

---

[5]     This action appears to have been taken in error.

B.     <u>Statute of Limitations</u>

Defendant moves for summary judgment on the ground that Plaintiff failed to file this civil

action within the Privacy Act's two-year limitations period.  Defendant argues that, as early as 1993

or as late as 1997, Plaintiff knew of the "maintenance of the inaccurate records and his resulting

placement in administrative detention."  Def.'s Mot. at 6-7.  Thus, Defendant argues that this action

is time-barred because Plaintiff knew or should have known more than two years before filing his

Complaint that BOP failed to maintain its records with the requisite level of accuracy, and knew that

BOP relied on those records in making a determination adverse to him and his interests.

Under the Privacy Act, an individual must file a civil action "within two years from the date

on which the cause arises."  5 U.S.C. § 552(g)(5).  "A cause of action arises under the Privacy Act

at the time that, (1) an error was made in maintaining plaintiff's records; (2) plaintiff was harmed

by the error; and (3) the plaintiff either knew or had reason to know of the error."  <u>Szymanski v.

United States Parole Comm'n.</u>, 870 F. Supp. 377, 378 (D.D.C. 1994); <u>Bergman v. United States</u>, 751

F.2d 314, 317 (10th Cir. 1984), <u>cert</u> <u>denied</u>, 474 U.S. 945 (1985).  <u>See</u> <u>Tijerina v. Walters</u>, 821 F.2d

789, 798 (D.C. Cir. 1987) (cause of action arises when "the plaintiff knows or should know of the

alleged violation").

"The critical issue for determining whether the plaintiff's action is barred by § 522(g)(5) is

the time at which the plaintiff first knew or had reason to know" that allegedly inaccurate records

were being maintained.  <u>Diliberti v. United States</u>, 817 F.2d 1259, 1262 (7th Cir. 1987).  "[A]n

individual's physical discovery of improper records does not give rise to a cause of action; it merely

strengthens the original cause of action which arose when the individual first had reason to believe

that the records were being maintained."  <u>Id</u>. at 1263 (citing <u>Etrell v. Dep't of the Army</u>, 626 F.

Supp. 903, 908-09 (C.D. Ill. 1986)).  Plaintiff's cause of action could not arise before he became aware of the existence of the records about which he complains.  Regardless of what Plaintiff may have heard in his conversations with BOP staff, he alleges that he did not learn of the existence of the offending records until November 2001, well within the statute of limitations.  See Tijerina v. Walters, 821 F.2d at 798; Compl. at 5-6 (Plaintiff "was privileged to learn that information has been placed in his institutional and central file, by SIS, labeling him as a 'gang member.'").

BOP's statute of limitations argument rests on one brief, totally unclear, snippet of testimony from a deposition given by Mr. Montemayor.  The snippet itself refers to an earlier exchange in the same deposition in which he suggests that he knew he was being categorized as a gang member as far back as the mid-1990's when he was imprisoned in El Reno.  The testimony in the deposition is extremely vague and it is questionable whether Mr. Montemayor fully understood all the questions being asked of him.  Moreover, even if BOP correctly characterizes the testimony, at that point Plaintiff could not identify any adverse determinations.  For that reason, he had no cause of action. This brief exchange between Plaintiff and opposing counsel about events which occurred almost a decade earlier is simply not sufficient to justify the granting of summary judgment.  That is particularly true in light of Plaintiff's allegation that he did not learn of the erroneous STG associate designation until November 19, 2001 when his inmate grievance was denied regarding his placement "in SHU for an extended period of time without just cause" because he was "being targeted as a gang member."  Pl.'s Opp. at 6, Ex. 4.

As noted in Anderson, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  477 U.S. at 255.  In short, it is clear that there is a genuine issue of material fact as to the date upon which

Plaintiff learned certain information and the date upon which a cause of action arose.  Therefore, summary judgment is inappropriate and must be denied.

### C.   Damages

Defendant next argues that Plaintiff fails to state a claim for damages. The Privacy Act provides:

> In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of –
>
> (A)   actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> (B)   the costs of the action together with reasonable attorney fees as determined by the court.

5 U.S.C. § 552(g)(4) (emphasis added).  It authorizes a minimum award of damages of $1,000 to a plaintiff who proves that he has suffered actual damages as a result of the defendant having violated the Act.  5 U.S.C. § 552a(g)(4)(A).  Defendant urges the Court to interpret the term "actual damages" so that only pecuniary losses are compensable under the Privacy Act.  Def.'s Mot. at 11. Under such an interpretation, damages for mental or emotional injury are not available.  Further, Defendant argues, because Plaintiff cannot establish any pecuniary loss, his claim for damages fails entirely.

In Doe v. Chao, 540 U.S. 614, 627 (2004), the Supreme Court concluded that under the precise language of the statute, quoted above, a plaintiff must suffer some damages in order to be entitled to recovery.  However, in footnote 12 of its Opinion, the Supreme Court also recognized that "[t]he Courts of Appeals are divided on the precise definition of actual damages."  Id.  The Court

declined to resolve that conflict in <u>Chao</u> because the issue was not raised in the petition for certiorari. <u>Id</u>.

The issue still remains undecided in our Circuit.  There are decisions at the District Court level which have held that Privacy Act damages are limited to out-of-pocket expenses.  <u>Pope v. Bond</u>, 641 F. Supp. 489, 501 (D.D.C. 1986); <u>Albright v. United States</u>, 558 F. Supp. 260, 264 (D.D.C. 1982), <u>aff'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 732 F.2d 181 (D.C. Cir. 1984); <u>Houston v. United States Dept. of Transportation</u>, 494 F. Supp. 24, 30 (D.D.C. 1979).  However, it is clear that the recent trend at the District Court level has been to allow Privacy Act suits seeking general compensatory damages, such as pain and suffering and non-pecuniary losses, to proceed.  <u>Boyd v. Snow</u>, 335 F.. Supp.2d 28, 39 (D.D.C. 2004); <u>Rice v. United States</u>, 211 F.R.D. 10, 13-14 (D.D.C. 2002); <u>Alexander v. FBI</u>, 971 F. Supp. 603, 607 (D.D.C. 1997); <u>Dong v. Smithsonian Institution</u>, 942 F. Supp. 69, 74 (D.D.C. 1996), <u>rev'd on</u>  <u>other</u> <u>grounds</u>, 125 F.3d 877 (D.C. Cir. 1997).  In particular, <u>Boyd</u>, which is the most recent case from our District Court, ruled that the plaintiff would be allowed to prove "severe emotional and physical harm, stress, sleeplessness, and nightmares" in order to demonstrate the "actual damages" which must be demonstrated under the Privacy Act. <u>Boyd</u>, 335 F. Supp.2d at 139.

The Government, commendably, does identify the many cases on both sides of this unresolved issue.  It urges this Court to give the term "actual damages" the more restrictive reading, its rationale being that because the Fifth Circuit in <u>Johnson v. DOT</u>, 700 F.2d 971, 972-74 (5th Cir. 1983), reached a decision that was diametrically opposed to that reached by the Sixth Circuit in <u>Hudson v. Reno</u>, 130 F.3d 1193, 1207 (6th Cir. 1997), a narrow interpretation of the term should be

adopted.  The Court does not find that rationale persuasive and will follow the lead of the most recent cases in this jurisdiction, such as <u>Boyd</u>, <u>Rice</u>, <u>Alexander</u>, and <u>Dong</u>.

The Government also argues that the Plaintiff's allegations of mental anguish are insufficient to satisfy the requirements of the Prison Litigation Reform Act.  That statute provides:

> No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  <u>See</u> <u>also</u> 28 U.S.C. § 1346(b)(2).  For purposes of Section 1997 e(e), the alleged physical injury need not be serious, although it must be more than <u>de minimis</u>.  <u>See</u> <u>Mitchell v. Horn</u>, 318 F.3d 523, 536 (3d Cir. 2003); <u>Oliver v. Keller</u>, 289 F.3d 623, 626 (9th Cir. 2002); <u>Liner v. Goord</u>, 196 F.3d 132, 135 (2d Cir. 1999); <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997) and <u>Tribe v. Snipes</u>, 19 Fed. Appx. 325, 326 (6th Cir. 2001).

Defendant argues that Plaintiff cannot prevail on his claim for damages for mental or emotional injury because he does not establish a prior showing of physical injury as required by 28 U.S.C. § 1997e(e).  However, Plaintiff attributes his heart attack to the physical and emotional stress resulting from BOP's erroneous STG designation, his 10 different administrative detentions, his fear for his safety, and his transfer to different BOP facilities.  Obviously those allegations, if proven, constitute a sufficient and adequate allegation of "physical injury" for purposes of satisfying Section 1997e(e).

### D.   <u>Transfer</u>

Lastly, Defendant moves to transfer venue, under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice" to the United States District Court for the Northern District of Texas, the district in which Plaintiff currently is incarcerated.  Defendant

argues that Plaintiff and all the witnesses reside in or near Texas, and necessary documents are in Texas. Plaintiff contests this fact and responds that the number of witnesses is few and that they are located in the District of Columbia, Oklahoma, and Florida, as well as Texas.

It is undisputed that venue in this District is proper. See 5 U.S.C. § 552a(g)(5). Plaintiff filed his original pro se complaint here three years ago, discovery is complete, and this Court is familiar with the case. His appointed counsel is in this District. Transfer of this action at this late date will only delay its resolution and impose hardship on Plaintiff's pro bono counsel. Defendant can cite to no substantive prejudice it will suffer from completing litigation in this District.

Therefore, Defendant's Motion to Transfer will be denied.

### E.      Plaintiff's Motion for Partial Summary Judgment

"To state a claim for damages under the Privacy Act, a plaintiff must assert that an agency failed to maintain accurate records, that it did so intentionally or willfully, and consequently, that an 'adverse determination [wa]s made' respecting the plaintiff." Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 583 (D.C.. Cir. 2002) (citing 5 U.S.C. §552a(g)(1)(C)). Plaintiff moves for partial summary judgment on one element of his claim: that the STG designation itself constitutes an adverse determination for purposes of the Privacy Act. See Pl.'s Mot. at 11.

Defendant has filed a fairly lengthy opposition which, while not always clear, essentially argues that there are material issues of fact regarding the consequences, if any, of the STG assignment, as well as the causation, injury and intent relating to whatever STG assignments he may have been given. For example, Defendant notes that Plaintiff's assumption that all of his placements in administrative detention following the STG assignment must have been the result of records showing such an assignment, does not follow either logically or necessarily. Defendant also argues

that Plaintiff has failed to establish any causation for the adverse effects he claims from the consequences of the STG assignment. Finally, Defendant argues that Plaintiff admits that he never personally saw any BOP records saying he was a gang member, but that staff told him this fact. If Plaintiff's placement in administrative detention was simply because of what prisoners or staff were saying about him, then it is far from clear that the determination to place him in administrative detention was based on inaccurate records (which would be covered by the statute), rather than the hearsay of prisoners and/or staff (which would not be covered by the statute).

In short, Defendant is correct that, at least in the context of this case, "one cannot examine an STG assignment in a vacuum and conclude that it is per se an adverse determination." Def.'s Opp. to Pl.'s Motion, p. 7. That conclusion is particularly compelling when, as here, all factual inferences must be resolved in the Defendant's favor. For these reasons, Plaintiff has not carried his burden under Fed. R. Civ. P. 56 to establish that there are no material facts in dispute and that he is entitled to judgment as a matter of law.

## IV.   CONCLUSION

For the reasons stated herein, the Court will **deny** both Motions.


August 25, 2005                                    /s/_____
                                                   Gladys Kessler
                                                   United States District Judge